IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GONZALO CONSTANTE VALVERDE,<br><br>Petitioner,<br><br>vs.<br><br>SHIKHA DOSANJ, Warden, et al.,<br><br>Defendants. | CIV. NO. 26-00061 JAO-KJM<br><br>ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER (ECF NO. 16) |

**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER (ECF NO. 16)**

On February 9, 2026, Petitioner Gonzalo Constante Valverde ("Petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). Before the Court is Petitioner's Motion for Temporary Restraining Order ("TRO"), which seeks to enjoin the immigration court from holding Petitioner's February 26, 2026 merits hearing until this Court has ruled on the Petition. *See* ECF No. 16.

To preserve the status quo pending the Court's consideration of the Petition, the Court GRANTS the TRO.

## I.   BACKGROUND

Petitioner is a citizen of Ecuador.  *See* ECF No. 1-1 ¶ 18; ECF No. 13-1 (Decl. of James Dold) ¶ 6.  On January 10, 2025, Petitioner applied for admission at San Ysidro, California.  *See* ECF No. 1-7 at 1; ECF No. 13-1¶ 7.  Upon applying, a Customs and Border Patrol ("CBP") officer served Petitioner with a Form I-862 Notice to Appear, which designated Petitioner as an "arriving alien" and ordered him to appear before an immigration judge in Miami, Florida in 2027 to show why he should not be removed pursuant to § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA").  *See* ECF No. 1-7 at 1, 4; ECF No. 13-1 ¶ 7.  That same day, Petitioner was issued a Form I-94 and paroled[1] into the United States, where he has remained since.  *See* ECF No. 13-1 ¶ 8; ECF No. 1-8 at 1; *see also* ECF No. 1-1 ¶ 21.

Within a week of his entry into the country, Petitioner applied for asylum, but has not yet received a decision on the application.  ECF No. 1-5 at 2; ECF No. 1-1 ¶ 23.  Eventually Petitioner moved to Kauai, Hawai'i, *see* ECF No. 1-1 ¶ 25, and on December 1, 2025, he flew to Oahu and reported to Immigration and Customs Enforcement ("ICE") in Honolulu where he was arrested and taken into

---

[1] "Parole" in this context refers to the Secretary of Homeland Security's discretion to allow inadmissible aliens to temporarily stay within the United States "for urgent humanitarian reasons or significant public benefit."  *See* 8 U.S.C. § 1182(d)(5)(A).

mandatory custody pursuant to 8 U.S.C. § 1225, *see* ECF No. 13-1 ¶ 13.  Since then, he has been in the custody of the Federal Detention Center Honolulu ("FDC" or "FDC Honolulu").

He filed his Petition on February 9, 2026.  ECF No. 1-1.  One of his primary arguments is that Respondents[2] have misclassified him as "seeking admission" despite his presence in the United States and subjected him to mandatory detention under 8 U.S.C. § 1225(b)(2).  *See* ECF No. 1-1 ¶ 30.  The Court set an expedited briefing schedule on the Petition, and Respondents timely filed their response on February 17, 2026.  ECF Nos. 12, 13.  Petitioner filed a reply on February 19, 2026.  ECF No. 14.  After reviewing the filings, the Court set a hearing on the Petition on March 3, 2026.  ECF No. 15.

On the afternoon of February 24, 2026, Petitioner filed the instant TRO— initially on an ex parte basis—asking the Court to "enjoin[] respondents from moving forward with [Petitioner's] merits hearing in immigration court set for February 26, 2026, pending adjudication of his Petition for a Writ of Habeas Corpus."  ECF No. 16 at 3.  The Court held a status conference with the parties on

---

[2]  Respondents are Shikha Dosanj, Warden of FDC Honolulu; David Porter, acting Field Office Director for ICE; Kristi Noem, Secretary of the U.S. Department of Homeland Security; Pam Bondi, Attorney General of the United States; and Todd Lyons, Acting Director for ICE.  *See* ECF No. 1-1 ¶¶ 12–16.

3

the morning of February 25, 2026, and orally granted the TRO.  This is the written order the Court said would follow.

## II.   LEGAL STANDARD

The standards governing temporary restraining orders ("TRO") and preliminary injunctions are "substantially identical."  *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation omitted); *see Kaiser Found. Health Plan, Inc. v. Queen's Med. Ctr., Inc.*, 423 F. Supp. 3d 947, 951 n.1 (D. Haw. 2019).

FRCP 65(a) allows courts to issue preliminary injunctions.  The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment issues in the cause."  *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010) (citation omitted).

To obtain preliminary injunctive relief, a plaintiff must establish:  (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).

The Ninth Circuit also employs a "sliding scale" approach to preliminary injunctions, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing

4

of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  The issuance of a preliminary injunction may be appropriate when there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

### III.   DISCUSSION

As relevant to the TRO, the thrust of the Petition is that Respondents have illegally subjected Petitioner to mandatory detention under 8 U.S.C. § 1225 pending his removal proceedings rather than the discretionary detention provisions under § 1226.[3]  *See* ECF No. 1-1 ¶¶ 29–41.  The Petition argues that if Respondents correctly classified Petitioner, he would be entitled to a bond hearing pursuant to § 1226(a), and potentially released.  *See id.* ¶ 4; *see also* ECF No. 16-1 at 1.

The Court finds that there is at least a serious question going to the merits of whether Petitioner is properly subject to mandatory detention under §1225(b).  *See Maldonado Vazquez v. Feeley*, 805 F. Supp. 3d 1112, 1136–42 (D. Nev 2025) (describing why § 1226(a) rather that § 1225(b)(2) applies to non-citizens arrested in the United States who had been living in the country for some period of time).

---

[3]  The Court recognizes that the Petition also asserts a due process right to a bond determination even if Plaintiff is correctly classified, but for the purpose of the TRO, the Court focuses on the statutory question.

As various district courts have explaining within the last several months, on a general level, § 1225(b) covers persons actively seeking to enter the country, whereas §1226(a) applies to those already present.  *See id.* at 1139–40; *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1179–80 (D. Haw. 2025); *see also Millan v. Voorhies*, 2026 WL 248376, at *9 (N.D. Ohio Jan. 30, 2026) ("Overwhelmingly, district courts have disagreed with the agency's interpretation of Section 1225(b)(2)(A)'s mandatory detention scheme and applying it to all immigrants who have applied for admission but have not reached a final determination on the merits."); *Ivonin v. Rhoney*, 2026 WL 199283, at *3 (W.D.N.Y. Jan. 26, 2026) ("This Court, like most to have considered the issue, [has] concluded that the law does not allow for what Respondents claim, and that noncitizens who are present in the United States without having been admitted or paroled are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) but instead are subject to detention under § 1226, and thus entitled to a bond hearing.").  Here, Petitioner was not detained upon his initial entry into the country, but instead only after nearly a year of living here without incident.  Thus, there are strong indications that Petitioner's mandatory detention is unlawful based on the recent caselaw from the wave of habeas petitions like Petitioner's.

The Court also concludes that Petitioner will likely suffer irreparable harm absent the preliminary relief he seeks—the continuation of his merits hearing in

immigration court—but the connection between the merits of his Petition and the injury he claims he'll suffer in the absence of the TRO requires some explanation. As discussed, Petitioner argues that he is not subject to mandatory detention during the pendency of his removal proceedings.  If he is correct, he may be able to be released during his removal proceedings.  This detained/non-detained distinction matters in part because it determines whether Petitioner's immigration case will proceed on the immigration court's detained docket, which is accelerated in comparison to the non-detained docket.  *See* ECF No. 16-1 at 26.  Petitioner's currently scheduled February 26, 2026 merits hearing reflects the expedited nature of his proceedings because of his detained status.

Petitioner argues that the expedited nature of the proceedings, coupled with his inability to freely communicate with counsel or travel to Kauai to gather documents while in FDC, hinder his efforts to prepare for his merits hearing, during which the immigration judge will rule on his asylum application.  *See id.* at 25–26.  The Court thinks it self-evident that reduced time to prepare for such a significant hearing could diminish Petitioner's chance of success on the application.  Further, the expedited nature of the proceeding may also limit Petitioner's ability to develop a record for appeal on any denial to the BIA.  *See* 8 C.F.R. § 1003.1(d)(3)(iv) ("Except for taking administrative notice of commonly

known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding cases.").

In effect, Petitioner asserts that there are two different avenues of proceedings in immigration court—detained and non-detained—and that the detained avenue comes with certain procedural disadvantages. The Petition challenges Petitioner's placement onto that path as illegal and argues that he should be allowed to proceed on the non-detained docket for his immigration proceedings. If the Court were to allow Plaintiff to continue on the detained path for the crucial merits hearing on February 26, 2026, the scope of relief that the Court could afford on the Petition could be reduced. As such, the Court concludes that Petitioner will likely suffer irreparable harm absent the relief he seeks here.

On the other side of the ledger, the Court does not think that Respondents will suffer harm from the slight delay of Petitioner's immigration proceedings.

In sum, the Court concludes that Petition raises strong legal contentions, and that Plaintiff will suffer irreparable harm if his immigration merits hearing is held on an expedited basis before this Court's ruling on the Petition. Part of the Court's reasoning here is that granting the TRO preserves the status quo and maintains the full scope of the Court's potential remedial powers over the pending Petition. Thus, the Court will grant Petitioner's TRO and enjoin the immigration court

8

merits hearing until the Court has decided the Petition, which it intends to do expeditiously.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the TRO.  Respondents shall not conduct Petitioner's merits hearing until this Court has ruled on the Petition.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, February 25, 2026.



Jill A. Otake
United States District Judge

CIV. NO. 26-61 JAO-KJM, *Constante Valverde v. Dosanj, et al.*; Order Granting Temporary Restraining Order (ECF No. 16)

9